CENTER FOR DISABILITY ACCESS
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
russ @ potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo,** | **Case**: 5:21-cv-00023-JWH-SP |
| Plaintiff, | **Plaintiff's Opposition to the Defense Motion to Dismiss the First Amended Complaint** |
| v. | |
| **DTPS C-12, LLC,** a California Limited Liability Company; and Does 1-10, | **Date** June 11, 2021<br>**Time** 9:00 a.m.<br>**Ctrm** 2 |
| Defendants, | Honorable John W. Holcomb |

1
2

# TABLE OF CONTENTS

3
4

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ................................................................ iii

I.   Question presented .................................................................. 1

II.  As discussed below, there is a critical issue of first impression before this Court. A workable framework for hotel-reservation websites must and will be developed with the assistance of the courts. But Plaintiff's own litigation history is irrelevant to the issues before the Court and plaintiff requests this Court reject the defense attempt to insert the plaintiff's litigation history into the analysis. ................................................................................... 1

III. The essential issue before the Court is how to interpret and construe – in a real-world setting – the regulation that requires a hotel to "identify and describe" accessible features "in enough detail" to permit "independent" assessment by persons with disabilities. ................................. 3

A.  The defense argument that the DOJ has a rule that *specifically* identifies what information must be on a hotel website" is untrue. In fact, the DOJ has expressly stated that it is not going create such a list. .......... 3

B.  Having a hotel phone operator ready to provide information about accessibility features is great but it does not excuse the hotel from providing such information on its reservation website. ................................. 6

IV.  The hotel in this case does not comply with the ADA regulations regarding necessary information on a reservation website. ............................................................... 7

V.   Plaintiff is not seeking an ADA-survey. Plaintiff seeks only some basic information that is "reasonable" to provide to wheelchair users. ................................................................. 9

VI.  What the plaintiff seeks—and believes is required by the ADA regulations—is not a big ask. It calls for a single paragraph of a few sentences. It can be prepared with a one-time miniscule effort. Other hotels *are* doing it. Every hotel *should* do it. ........................................................12

VII. Given the remedial nature of the ADA's civil rights mandate, its regulations should be construed broadly and liberally. But the defense is calling for the narrowest of constructions. ..........................................................................14

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VIII. The defense relies too heavily on a handful of unpublished district level decisions, most of which fail to directly address the issue on its merits.................................................16

    *A. Barnes v. Marriott* ....................................................17

    *B. Strojnik v. Orangewood* ..........................................19

    *C. Strojnik v. 1315 Orange LLC* ..... **Error! Bookmark not defined.**

    *D. Rutherford v. Evans Hotels* .......................................21

    *E. Garcia v. Gateway* ................................................22

    *F. Arroyo v. JWMFE* and *Salinas v. Apple Ten* .............................23

IX. The DOJ's Consent Decree – as well as the DOJ Commentary – should not be taken to override or devalue the plain language of the regulatory language.......................24

X.    Conclusion...........................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Arroyo v. JWMFE*,
    8:21-cv-00014-CJC (C.D. Cal. February 16, 2021)......................23

*Barnes v. Marriott Hotel Servs., Inc.*,
    2017 WL 635474 (N.D. Cal. Feb. 16, 2017) ....................17, 18, 19

*Botosan v. Paul McNally Realty*,
    216 F.3d 827 (9th Cir. 2000)...................................................24, 25

*Colston v. Shakti, LLC*,
    5:15-cv-02306-NC (N.D. Cal. April 20, 2018)..............................11

*Colston v. Shakti, LLC*,
    5:15-cv-02306-NC (N.D. Cal. March 14, 2017)...........................11

*Corley v. United States*,
    556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) ................ 8

*D'Lil v. Best W. Encina Lodge & Suites*,
    538 F.3d 1031 (9th Cir. 2008)....................................................... 2

*Garcia v. Gateway*,
    2:20-cv-10752-PA-GJS (C.D. Cal.  February 25, 2021)..............22

*Garcia v. Patel and Joshi Hospitality Corp.*,
    5:20-cv-02666-JGB-PVC (C.D. Cal. March 19, 2021) ...............16

*Hason v. Med. Bd. of California*,
    279 F.3d 1167 (9th Cir. 2002).....................................................16

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019)................................................................24

*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir.), cert. denied, 140 S. Ct. 122, 205 L. Ed. 2d
    41 (2019) .....................................................................................25

Oppo to Motion to Dismiss                      5:21-cv-00023-JWH-SP

*Rutherford v. Evans Hotels, LLC*,

    2020 WL 5257868 (S.D. Cal. 2020) .......................................21, 22

*Scheidler v. Nat'l Org. for Women, Inc.*,

    547 U.S. 9, 126 S. Ct. 1264, 164 L. Ed. 2d 10 (2006) ................... 8

*Stevens v. Corelogic, Inc.*,

    899 F.3d 666 (9th Cir. 2018)............................................... 8

*Stojnik v. Kapalua Land*,

    2019 WL 4685412 (D. Ha. 2019) ...................................21

*Strojnik v. 1315 Orange LLC*,

    2019 WL 5535766 (S.D. Cal. 2019) ............................20

*Strojnik v. Orangewood*,

    8:19-cv-00946-DSF (C.D. Cal. Jan. 22, 2020) .......................19, 20

**Statutes**

42 U.S.C. § 12101(a)(1).....................................................14

42 U.S.C. § 12101(a)(3).....................................................15

42 U.S.C. § 12101(a)(7).....................................................15

42 U.S.C. § 12101(b5:20-cv-02666-JGB-PVC (C.D. Cal. March 19, 2021))(1) ......................................................15

**Regulations**

36 C.F.R., Part 1191, Appendix B § 224.2 ...........................12

36 C.F.R., Part 1191, Appendix D § 603.2............................ 9

36 C.F.R., Part 1191, Appendix D § 603.4............................ 9

36 C.F.R., Part 1191, Appendix D § 604.2............................ 9

36 C.F.R., Part 1191, Appendix D § 604.4...........................11

36 C.F.R., Part 1191, Appendix D § 604.5...........................11

iv

36 C.F.R., Part 1191, Appendix D § 604.6-604.7.................................. 9

36 C.F.R., Part 1191, Appendix D § 608.3.........................................12

36 C.F.R., Part 1191, Appendix D § 609.............................................10

36 C.F.R., Part 1191, Appendix D § 806.2.3........................................10

36 C.F.R., Part 1191, Appendix D, § 606.5.........................................11

**Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law:

      The Interpretation of Legal Texts 16 (2012)............................... 8

Nondiscrimination on the Basis of Disability by Public

      Accommodations and in Commercial Facilities,

        73 FR 34508-01, 2008 WL 2413721 (June 17, 2008)..............14

Nondiscrimination on the Basis of Disability by Public

      Accommodations and in Commercial Facilities,

        75 FR 56236-01, 2010 WL 3561890 (September 15, 2010)

..................................................................................passim

## I.  Question presented

Under the ADA, a hotel's reservation website must *identify* accessible features and *describe* them in enough *detail* to permit a person with a disability to *independently assess* whether a hotel or guestroom meets his *accessibility needs*.[1] Here, the hotel website says absolutely *nothing* about the accessibility of the bed, the sink, and the toilet. Plaintiff alleges that due to his disability, these features are of critical importance and he needs to know this information. Does the plaintiff, therefore, state a claim under the ADA?

## II.  As discussed below, there is a critical issue of first impression before this Court. A workable framework for hotel-reservation websites must and will be developed with the assistance of the courts. But Plaintiff's own litigation history is irrelevant to the issues before the Court and plaintiff requests this Court reject the defense attempt to insert the plaintiff's litigation history into the analysis.

The defense moves this Court to take judicial notice of Plaintiff's litigation history.[2] But the defense never explains why it is relevant to any legal issue before the Court. The critical issue before this Court has to do with what the ADA requires with respect to hotel reservation websites. Plaintiff's work as an ADA tester has nothing to do with that issue.

As the DOJ noted when passing the hotel-reservation regulations, *every year* the DOJ "receives many complaints" that although an accessible hotel room is reserved, it turns out that they are not accessible, leading to the understandable "frustration" faced by persons with disabilities who consistently find it "difficult or impossible to obtain information about accessible rooms and hotel features" resulting in the DOJ conclusion that

---

[1] 28 U.S.C. § 36.302(e)(1)(ii).
[2] RJN (Dkt. 14-2), Para. 11.

Oppo to Motion to Dismiss                              5:21-cv-00023-JWH-SP

"[t]he ability to obtain information about accessible guest rooms . . . [is] of critical importance" to persons with disabilities.[3]

The Center for Disability Access similarly receives scores and scores of complaints by persons with disabilities who, unfortunately, are unwilling or unable—due to fear or health issues—to act as a plaintiff and thrust themselves into the spotlight of public litigation. Thus, it has fallen, as it often does, to ADA testers like the plaintiff, i.e., persons with profound disabilities who are willing to defend these critically important civil right guarantees. And yet plaintiff understands—and has been the target of—the skepticism and criticism of those who find serial litigation by ADA testers to be unsavory.

Plaintiff respectfully requests this Court not grant the request for judicial notice regarding plaintiff's litigation history on the basis that it is not relevant to the issues before the Court. As the Ninth Circuit reminded us, focusing on an ADA tester's "history of ADA litigation as a basis for questioning" their sincerity or credibility is improper.[4] The issues involved in this lawsuit and in the briefs surrounding this motion are difficult, nuanced, and of great importance. They deserve thoughtful discussion and the effort to inject character attacks or polemics into the issues can only serve to denigrate or diminish the importance of the issues. It would be a real travesty of justice if these issues received short shrift or stingy application merely because the case was brought by an active ADA tester.

---

[3] Nondiscrimination on the Basis of Disability by Public
    Accommodations and in Commercial Facilities, 75 FR 56236-01,
    2010 WL 3561890 (September 15, 2010).
[4] *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir.
    2008).

Oppo to Motion to Dismiss                        5:21-cv-00023-JWH-SP

**III.** **The essential issue before the Court is how to interpret and construe – in a real-world setting – the regulation that requires a hotel to "identify and describe" accessible features "in enough detail" to permit "independent" assessment by persons with disabilities.**

The ADA regulations for booking hotel rooms address a specific grievance that persons with disabilities have raised over the years: that not enough information is provided on the reservation websites to let a person with a disability know whether a particular hotel or room would work for them. The regulation requires a hotel to: "Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[5]

This lawsuit and the arguments found in this brief all center on how to construe and apply that regulation. Plaintiff makes his arguments below. But first the Plaintiff wishes to dispense with two arguments by the defense that cannot withstand serious scrutiny.

    **A.** **The defense argument that the DOJ has a rule that *specifically* identifies what information must be on a hotel website" is untrue. In fact, the DOJ has expressly stated that it is not going create such a list.**

The defense suggests that the DOJ has itemized what information needs to be found on a hotel's reservation website. In making this argument, the defense cites to materials in the Federal Register where the DOJ discussed the notice and rule making process for this regulation.[6] There, the

---

[5] 28 U.S.C. § 36.302(e)(1)(ii).

[6] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01, 2010 WL 3561890 (September 15, 2010).

1   DOJ explains that commentators asked the DOJ to "identify the specific
2   accessible features of hotel rooms that must be described in the reservations
3   system."[7] Commentators wanted the DOJ to limit the required information
4   to simply "bathroom type (tub or roll-in shower) and communication
5   features."[8] But the DOJ expressly *rejected* that request, stating without
6   equivocation that: "the Department cannot specify what information must
7   be included in every instance."[9] In other words, there is no list. Instead, the
8   DOJ neatly identified the two ends of the spectrum: "The Department
9   recognizes that a reservations system is not intended to be an accessibility
10  survey. However, specific information concerning accessibility features is
11  essential to travelers with disabilities."[10]

12          Maximum information would be a full-ADA survey. But that is not
13  required. Minimum information would be what the commentators asked
14  for, i.e., something like a meager comment that there is a "two queen bed
15  guestroom with roll-in shower." That position was rejected. The DOJ
16  simply noted that while an ADA survey is not needed, specific information
17  about accessibility features is essential.

18          What the defense has seized upon is some musings by the DOJ that
19  for newer hotels built in full compliance with the 1991 Standards it "may"
20  be enough to provide some simple information because "many" individuals
21  with disabilities would be "comfortable" making reservations with just that
22  modest amount of information.[11] But this is no standard. This is not a

23

---

24  [7] Nondiscrimination on the Basis of Disability by Public
25        Accommodations and in Commercial Facilities, 75 FR 56236-01,
        2010 WL 3561890 (September 15, 2010).
26  [8] *Id.*
27  [9] *Id.*
28  [10] *Id*.
    [11] *Id*.

Oppo to Motion to Dismiss                          5:21-cv-00023-JWH-SP

staked-out position by the DOJ. Saying that it *might* be enough for *some* persons with disabilities is also the same as saying it *might not* be enough for others. Now that the regulation has been in existence for ten years, it is time to assess and determine what level of information is or is not sufficient. That is the purpose of this lawsuit. The DOJ's might/might not sort of discussion is an acknowledgment that the issue must be tested and not a rule or standard. But the defense wants to take this musing commentary by the DOJ and elevate it to a position of a definitive list of what is required on a reservations website . . . although the DOJ specifically said (in the same paragraph) that it cannot and would not identify a list of what is sufficient in a reservation system.

The DOJ also noted that in older hotels that clearly cannot be deemed "accessible," the hotel should carefully delineate what is and what is not accessible and give specific information even about the inaccessible features such as informing a guest that the entrance doors are 30 inches instead of the ADA-compliant 32 inches, because that still might work for some guests.[12] Here, though, we are not dealing with that situation. Here, we have a hotel that claims to be accessible. And the question is how much information the hotel must provide to meet the ADA requirement to "Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[13]

---

[12] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01, 2010 WL 3561890 (September 15, 2010).

[13] 28 U.S.C. § 36.302(e)(1)(ii).

1
2    **B.    Having a hotel phone operator ready to provide
3            information about accessibility features is great but it does
        not excuse the hotel from providing such information on
        its reservation website.**

4        The defense argues that the DOJ has specifically approved of
5    alternatives to listing information on websites, such as a staffed telephone
6    line.[14] The defense is being tricky here. The DOJ may have noted that
7    having staffed lines is great, but the DOJ specifically rejected the position
8    that having a staffed lines excuses having the required information on the
9    website. The regulation requires that persons with disabilities have the
10   opportunity to make reservations "in the same manner"[15] as others and,
11   therefore, because ambulatory guests can book a suitable hotel room from
12   the website without having to call the hotel, a person with a disability is to
13   be afforded the same privilege.

14       In fact, during the notice and rule making process, hotels urged the
15   DOJ to change the language "in the same manner" to "in a substantially
16   similar manner"[16] in order to permit hotels to use the staffed phone lines.
17   The hotels noted that the reservation "database systems may not contain
18   sufficient information . . . without consulting directly with the hotel, and
19   that updating these systems might be expensive and time consuming."[17] But
20   the DOJ rejected this request, finding the argument not only unpersuasive
21   (noting that many hotels already meet the requirement of having that
22   information on the website) but also because "basic nondiscrimination
23   principles mandate that individuals with disabilities should be able to

24
25   [14] Defense Motion (Dkt. 14-1), P. 12, lines 23-25.
     [15] 28 U.S.C. § 36.302(e)(1)(i).
26   [16] Nondiscrimination on the Basis of Disability by Public
27           Accommodations and in Commercial Facilities, 75 FR 56236-01,
             2010 WL 3561890 (September 15, 2010).
28   [17] *Id.*

Oppo to Motion to Dismiss                          5:21-cv-00023-JWH-SP

1  reserve hotel rooms with the same efficiency, immediacy, and convenience
2  as those who do not need accessible guest rooms."[18]

3       In summary, the required information must be found on the website
4  itself and it is not sufficient to claim that the information can be obtained
5  by jumping through an additional hoop and calling the hotel directly.

6

7  **IV.  The hotel in this case does not comply with the ADA**
8  **regulations regarding necessary information on a**
   **reservation website.**

9       The defense asks this Court to take judicial notice of its website
10 pages. Plaintiff does not object and will focus on those accessibility
11 pages.[19] In the column of accessibility information, the hotel slaps the label
12 "accessible" on a host of common areas. Turning to the actual hotel rooms,
13 the hotel mentions "accessible restrooms" and "accessible roll-in shower or
14 tub grab rails".[20] This is all. Noting about the toilet, the beds, or the sink.

15      The labelling of things as *accessible* is simply a conclusion or
16 opinion by the hotel. It provides no actual information. It requires a hotel
17 guest to trust the judgment of the hotel. It does not permit a person with a
18 disability to make an *independent* assessment about the suitability of the
19 hotel and, therefore, runs afoul of the plain language of the ADA regulation.
20 The label *accessible* might be said to "identify" an accessible feature but
21 cannot be said to "*describe* accessible features . . . in enough *detail* to
22 reasonably permit individuals with disabilities to *assess independently*
23 whether a given hotel or guest room meets his or her accessibility needs."[21]

24

25

26 [18] *Id.*
27 [19] RJN (Dkt. 14-4), Exh. 1-3.
28 [20] RJN (Dkt. 14-4), Exh. 2.
   [21] *See* 28 U.S.C. § 36.302(e)(1)(ii) (emphasis added).

7

If the regulatory language said, simply, that a hotel must "identify" accessible features, the defense would have an argument that its website information passes muster. But the regulatory language says so much more. Not only must the hotel simply "identify" accessible features, but it must also "describe" them and describe them "in enough detail" to permit individuals with disabilities to "assess independently" whether the guest room meets their needs.[22]

We are not free to simply ignore regulatory words, phrases and language. As the Supreme Court has repeatedly held, "It is our duty to give effect, if possible, to every clause and word of a statute."[23] And the Ninth Circuit, quoting another Supreme Court decision, has held that this is a "fundamental principle of statutory interpretation," and the courts must work to ensure that "no part will be inoperative or superfluous, void or insignificant."[24] Or, to frame the canon of construction yet another way: "Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant. If a provision is susceptible of a (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred."[25]

Here, there must be a distinction between simply *identifying* an

---

[22] 28 U.S.C. § 36.302(e)(1)(ii).

[23] *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 21, 126 S. Ct. 1264, 1273, 164 L. Ed. 2d 10 (2006) (internal cites and quotes omitted).

[24] *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673–74 (9th Cir. 2018), *quoting*, *Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009).

[25] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 16 (2012), p. 176.

Oppo to Motion to Dismiss                              5:21-cv-00023-JWH-SP

accessible feature and *describing* it with enough *detail* to permit an assessment. As the DOJ notes, "describ[ing] the accessible features" in the guestrooms is "essential to ensure that individuals with disabilities receive the information they need" and as an obvious and "practical matter, a public accommodation's designation of a guest room as 'accessible' will not ensure necessarily that the room complies" with the ADA Standards.[26] It simply is not enough to simply slap an "accessible" label on things.

Here, there is zero details about the accessibility of the bed, the sink, and the toilet. How can this be sufficient under any interpretation of the regulation?

### V. Plaintiff is not seeking an ADA-survey. Plaintiff seeks only some basic information that is "reasonable" to provide to wheelchair users.

There are a voluminous number of technical requirements that apply to hotel guestrooms. For example, just looking at the bathroom, there are regulations governing clearances, turning space, overlap and door swings.[27] Coat hooks and shelves are governed.[28] The centerline of the water closet is regulated.[29] The specific location of flush controls on the toilet and the toilet paper are mandated.[30] The timing of hand-operated metering faucets are governed as well as the temperature and the design of the on/off controls and the non-positive shut-off valve for handheld shower spray units.[31] The

---

[26] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01, 2010 WL 3561890 (September 15, 2010).
[27] 36 C.F.R., Part 1191, Appendix D § 603.2.
[28] 36 C.F.R., Part 1191, Appendix D § 603.4.
[29] 36 C.F.R., Part 1191, Appendix D § 604.2.
[30] 36 C.F.R., Part 1191, Appendix D § 604.6-604.7.
[31] 36 C.F.R., Part 1191, Appendix D § 606.4.& 608.6.

9

outside diameter and the cross-section dimensions of the grab bars are regulated, not to mention the rotational ability and allowable stresses/structural strength of grab bars.[32] And the list goes on and on.

In other words, there are numerous, highly technical requirements for guestroom bathrooms and all of them relate to usability and safety. They are not unimportant, but it is simply not "reasonable" to expect this level of detail to be provided. The ADA only requires enough detail to *reasonably permit individuals with disabilities to assess*" whether the hotel room works for them.[33] As the DOJ notes, "a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities."[34]

But there must be some information provided about the critical or core components of a guestroom. For example, it is probably axiomatic to note that the primary use of a hotel guestroom is as a place to sleep. Being able to use the bed is of critical importance. The ADA only has one regulation for beds: that they have at least 30 inches of clearance on the sides to permit transfer.[35] This simple feature is of critical importance. For example, in one of plaintiff's counsel's cases before Judge Cousins, a wheelchair-using plaintiff booked an accessible room, found that there was insufficient clearance at the bed, could get no help from the hotel, spent the night in his wheelchair, and developed debilitating pressure wounds.[36] He

---

[32] 36 C.F.R., Part 1191, Appendix D § 609.2, 609.6 – 609.8.

[33] *See* 28 U.S.C. § 36.302(e)(1)(ii) (emphasis added).

[34] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01, 2010 WL 3561890 (September 15, 2010).

[35] 36 C.F.R., Part 1191, Appendix D § 806.2.3.

[36] *Colston v. Shakti, LLC*, 5:15-cv-02306-NC, (N.D. Cal. March 14, 2017), Docket Entry 43.

---

10

was in San Jose to attend his father's funeral, ended up missing it due to the terrible pain and anguish he was suffering. After testifying to the Court in an evidentiary hearing, he was awarded $182,500 in compensatory damages.[37] Again, a single sentence on the website that: "the accessible guestrooms provide at least 30 inches of maneuvering clearance on the sides of the beds" would be sufficient. Here, the hotel says nothing about the accessibility of the beds.

Sinks are simple. They have faucets and a mirror. Being able to use the sink and mirror permits a wheelchair user to wash his hands, brush his teeth and groom himself. When wheelchair users have problems with sinks they almost always fall into two categories: (1) ability to pull up and under the sink; and (2) ability to use the mirror. The ADA requires accessible knee clearance under a sink[38], that the plumbing is wrapped to protect against burning contact[39], and that a mirror be lowered to a certain height.[40] A single sentence would suffice: "The sink provides knee clearance of at least 27 inches high for at least 8 inches in depth, the plumbing is wrapped, and the mirror's lowest reflective edge is no more than 40 inches in height." Here, the hotel mentions nothing.

Wheelchair users and persons like the Plaintiff who are paralyzed from the waist down, only need to know two things about a toilet: (1) that the seat height is accessible[41] and (2) that there are grab bars.[42] Again, a single sentence would suffice: "the toilets in the accessible guestrooms

---

[37] *Colston v. Shakti, LLC*, 5:15-cv-02306-NC, (N.D. Cal. April 20, 2018), Docket Entry 54.
[38] 36 C.F.R., Part 1191, Appendix D, § 606.2 & 306.3.3.
[39] 36 C.F.R., Part 1191, Appendix D, § 606.5.
[40] 36 C.F.R., Part 1191, Appendix D, § 603.3.
[41] *See* 36 C.F.R., Part 1191, Appendix D § 604.4.
[42] *See* 36 C.F.R., Part 1191, Appendix D § 604.5.

11

1   have grab bars and the seat height is between 17-19 inches." This gives

2   wheelchair users actual knowledge that the toilet will work for them. Here,

3   the hotel mentions nothing.

4

5   **VI.    What the Plaintiff seeks—and believes is required by the**
6   **ADA regulations—is not a big ask. It calls for a single**
7   **paragraph of a few sentences. It can be prepared with a**
    **one-time miniscule effort. Other hotels *are* doing it. Every**
    **hotel *should* do it.**

8         Plaintiff does not seek an ADA-survey. This is a few bits of

9   information about the critical and core components of the accessible guest

10  rooms. This information is so very easy for a hotel to provide. For example,

11  in a hotel like the one in this case, St. Regis San Francisco Hotel, that has

12  260 guestrooms, the ADA only requires that there be ten accessible rooms

13  and only three with roll-in showers.[43] Hotel personnel simply need to visit

14  those rooms and take a few measurements and/or some photos (a photo is

15  worth a thousand words after all) and post this modest amount of

16  information to the website. It is a small ask to comply with a hugely

17  important civil right that implicates the health and safety of the most

18  vulnerable of guests.

19         This is hardly burdensome. Other hotels are already doing this. The

20  Hotel Fusion at 140 Ellis Street, for example, provides much of this

21  information: "removable showerheads," "36" clearance around 3 sides of

22  bed," "entry and bathroom doors allow 32' clear passage," "door hardware

23  usable with one hand without tight grasping, pinching and twisting," etc.[44]

24         Or, consider the Comfort Inn at 940 West Weddell Drive, Sunnyvale,

25  which provides a wealth of information. Perhaps it took them a few hours

26  to develop but it was a one-time effort and now complies with the ADA

27  _____

28  [43] 36 C.F.R., Part 1191, Appendix B § 224.2
    [44] https://hotelfusionsf.com/accessibility-page/

Oppo to Motion to Dismiss                          5:21-cv-00023-JWH-SP

mandate to "Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[45] Consider some of the specific details the Comfort Inn provides on its website: Doors with 32 Inch Wide Openings, retractable table at registration desk, door hardware (lever, pull, panic bar, etc.) usable with one hand, without tight grasping, pinching or twisting of the wrist, drinking fountains no higher than 35" from the floor, hotel corridors a minimum of 36" wide, no steps or abrupt level changes that will impede access for persons who use wheelchairs, Self-Operating ADA Pool Lift, Self-Operating ADA Spa Lift, drapery control with a 36" Clear Path, Table/Desk with Knee Space 27" (width) and 34" (height), power outlet with a clear space in front, 15" from ground, power outlets within 4" of telephone, grab bars in shower with a shower seat, hand-held shower wand, toilet grab bars, drain and water pipes under sink are insulated, etc.[46]

Plaintiff does not argue that all of this is required by the ADA. Of course, nothing prevents a hotel from providing such valuable information to its wheelchair-using patrons. The point is that asking the defendant in this case to provide a handful of sentences about the core and essential features is not burdensome or onerous and is, in fact, required by the plain language of the regulation. In 2008, the DOJ had this to say: "Individuals with disabilities must be able to ascertain which features—in new and existing buildings—are included in the hotel's accessible guest rooms. The presence or absence of particular accessible features may be the difference

---

[45] 28 U.S.C. § 36.302(e)(1)(ii).

[46] *See* https://www.comfortinnsunnyvale.com/ada-accessibility-amenities-services-facilities.

1    between a room that is usable by a person with a disability and one that is

2    not. Information about the availability and nature of accessible features will

3    minimize the risk that individuals with disabilities will reserve a room that

4    is not what was expected or needed."[47] A hotel reservation website that

5    simply says: "roll-in shower" is not sufficient.

6    **VII.  Given the remedial nature of the ADA's civil rights**

7    **mandate, its regulations should be construed broadly and liberally. But the defense is calling for the narrowest of constructions.**

8         In passing the Americans with Disabilities Act, Congress found that

9    individuals with disabilities tend to be isolated and segregated which is a

10   serious and pervasive social problem.[48] Congress found that the failure by

11   places of public accommodations to change their policies with respect to

12   recreation, travel, and housing are among the great challenges.[49] And as a

13   nation, our proper goal is to ensure "equality of opportunity," "full

14   participation," "independent living," and "self-sufficiency" for such

15   individuals.[50] The purpose of the ADA was to create a "comprehensive

16   national mandate for the elimination of discrimination against individuals

17   with disabilities."[51] Thus, the ADA, a federal civil rights statute, is remedial

18   in nature.

19        The Supreme Court has repeatedly held that when it comes to

20   construing remedial and civil rights statutes, courts should be "guided by

21   the familiar canon of statutory construction that remedial legislation should

22

23

24   _____

[47] Nondiscrimination on the Basis of Disability by Public
     Accommodations and in Commercial Facilities, 73 FR 34508-01,
     2008 WL 2413721 (June 17, 2008).

25

26   [48] 42 U.S.C. § 12101(a)(1).

27   [49] 42 U.S.C. § 12101(a)(3)&(5).

     [50] 42 U.S.C. § 12101(a)(7).

28   [51] 42 U.S.C. § 12101(b)(1).

14

be construed broadly to effectuate its purposes."[52] The Ninth Circuit has expressly applied that canon of construction in construing and interpreting the ADA:

> Furthermore, the magistrate judge's narrow construction of the phrase "services, programs, or activities" is at odds with the remedial goals underlying the ADA. *See Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir.1998) (observing that the ADA is a remedial statute which should be construed broadly); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir.1996) (same); *see also Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) (recognizing the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"). Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."
>
> [*Hason v. Med. Bd. of California*, 279 F.3d 1167, 1172 (9th Cir. 2002).]

Plaintiff does not believe that a court could, in good conscience, interpret or construe the language "describe accessible features in the hotels and guest rooms . . . in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs" as permitting a hotel to simply generally claim that the hotel has "accessible" features with almost no describing details. And certainly, it is a fair and reasonable construction of the regulation to find that it requires specific information about the core and essential features of a hotel guestroom as the plaintiff has outlined above.

Thus, to the extent that there are competing ways to construe the regulatory language, i.e., a very narrow or stingy application such as that advocated by the defense, or a little more expansive construction advocated

---

[52] *See* e.g., *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S. Ct. 548, 553, 19 L. Ed. 2d 564 (1967).

by the plaintiff, this Court should be guided by the repeated directives from the Supreme Court and Ninth Circuit about providing a broad and liberal construction to carry out the ADA's important purposes.

## VIII.   The defense relies too heavily on a handful of unpublished district level decisions, most of which fail to directly address the issue on its merits.

The defense cites to seven unpublished district level decisions in support of its arguments. But the defense has either misconstrued or exaggerated the holdings of these decisions. Although the defense claims that these decisions are "dispositive" of plaintiff's claim, the decision are neither binding nor persuasive authorities and should not be relied upon by this Court.

In the recent decision of *Garcia v. Patel and Joshi Hospitality Corp.* 5:20-cv-02666-JGB-PVC (C.D. Cal. March 19, 2021), which is a case nearly identical to this, the Court held that it was improper at this early stage in litigation to find that the complaint could not state a cause of action. "The Court is therefore unpersuaded by Defendant's slippery slope argument that crediting Plaintiff's request for more detailed information about accessibility features that are 'important to him' would impose on hotels an obligation to list every accessibility requirement that may be important for any disabled individual." *Id.* at P.7.

Also, in *Love v. Cow Hollow Motor Inn Associates, L.P.* 20-cv-07525-SK (N.D. February 17, 2021), the court denied a motion to dismiss, correctly grasping the key word in the DOJ's guidance that it "may" suffice if a hotel lists features as accessible, does not mean "will suffice". "The Court notes that the DOJ's guidance does not state that, if a website provides certain descriptions, then the website satisfies the ADA. Instead, the DOJ states it 'cannot specify what information must be included in every instance' and that for hotels built in compliance with the 1991

16

1  Standards, 'it *may* be sufficient to specify' certain details." Id. at P. 3, LL.
2  19-26.

3       Also, the Defendant's do not get to rely on this "may" standard
4  *unless their building is built to 1991 standards.* They have not furnished
5  any evidence that it was. Therefore, they do not get to avail themselves to
6  this standard.

7       In *Whitaker v. Casa Madrona Hotel and Spa, LLC*, 3:21-cv-00629-
8  EMC (N.D. Cal. April 26, 2021) the Court denied a motion to dismiss in a
9  hotel reservations case. The Court again rightfully focused on the early
10 stage of litigation. It held that the plaintiff at that stage "need only plausibly
11 suggest an entitlement to relief. Here, it is plausible that a reasonable jury
12 could find in Mr. Whitaker's favor because, *e.g.*, accessibility information
13 on the Hotel's website is not always easily locatable…and accessibility
14 information on other parts of the website, including on the pages that
15 describe the ADA guest rooms, is spare (sic)." *Id.* at *2, LL. 2-9.

16

17     **A.**    **Barnes v. Marriott**

18      In *Barnes*, a wheelchair user went to San Jose to attend the San Jose
19 Abilities Expo at the Convention Center. She booked a hotel at the San Jose
20 Marriott Hotel, asking for an accessible room, but her reservation stated
21 "not guaranteed."[53] Concerned about getting the accessible room, she
22 called and spoke to a Marriott employee and was given assurances that she
23 would in fact get an accessible room.[54] When she arrived, she did not get
24 an accessible room.[55] She sued under the theory that although the website

25

26 [53] *Barnes v. Marriott Hotel Servs., Inc.*, 2017 WL 635474, *2 (N.D. Cal.
27      Feb. 16, 2017).
28 [54] *Barnes,* 2017 WL 635474 at *2
   [55] *Barnes,* 2017 WL 635474 at *2.

Oppo to Motion to Dismiss                         5:21-cv-00023-JWH-SP

and confirming emails said "not guaranteed," the phone call is also part of the reservation process and the employee did, in fact, guarantee she would get an accessible room. Given that when an accessible room is booked, it must be guaranteed and removed from the reservation system, Barnes felt she had a case.[56] She also sued for lack of information about accessibility features on the website.[57]

After summarizing the parties' arguments, the district court found that the Barnes lacked standing. "In her deposition, Barnes testified that she has not returned to the San Jose Marriott since 2013 and that she has no plans to return to the Hotel. Further, she stated that she has not attended any Abilities Expo events since 2013. In her declaration in support of her summary judgment motion, however, she states that she 'currently' has no plans to visit the Marriott."[58] The district court further held: "She has not even submitted any evidence that the Abilities Expo will continue to be held in San Jose, let alone at the San Jose Convention Center (adjacent to the Hotel). Without more, Barnes has only stated the sort of 'someday' intentions that are insufficient to establish standing."[59]

The court then held: "Barnes has not shown that she has standing to sue for injunctive relief under the ADA. As a result, defendant is entitled to dismissal of this claim."[60] And this decision was correct. It turned out that the San Jose Expo Abilities Expo was never held again in that location. Plaintiff had no basis to appeal that decision. Thus, although the district court turned to the "alternate" argument about the sufficiency of the hotel's website, plaintiff could not appeal as the court had legitimately found a lack

---

[56] *Barnes,* 2017 WL 635474 at *3.

[57] *Barnes,* 2017 WL 635474 at *3.

[58] *Barnes,* 2017 WL 635474 at *3 (internal docket cites omitted).

[59] *Barnes,* 2017 WL 635474 at *8.

[60] *Barnes,* 2017 WL 635474 at *9.

18

1  of standing.

2       As for the level of information on the website, the *Barnes* court noted

3  some of the specifics identified on the hotel's website, "accessible guest

4  rooms have a 32 inch wide opening" and that there was a "roll-in shower"

5  and then, referring to the same musing commentary by the DOJ as cited by

6  the defense in the present case, the *Barnes* court reasoned: "these

7  descriptions and this level of detail is appropriate and acceptable. The court

8  is thus not persuaded that Marriott's website violates Section 36.302(e) for

9  any failure to identify and describe accessibility features."[61]

10      There is almost no analysis by the *Barnes* court on this topic. It was

11  not a necessary part of the holding or the decision. When the court

12  concluded its order, it stated: "Because Barnes does not establish standing

13  to assert her federal claim, the court denies her motion for summary

14  judgment and grants summary judgment in favor of the defendant on that

15  claim, which is dismissed in its entirety."[62] There was no further mention

16  of the adequacy of the website. Thus, the court's cursory discussion of the

17  adequacy of the website information is likely dicta, remarkably scant,

18  unnecessary to the holding, and found in an unpublished decision that was

19  insulated from appellate review because the actual reason for dismissal was

20  correct. This Court should analyze and consider the ADA statutory scheme,

21  the regulatory language, and the balancing of factors involved in helping

22  the parties fashion an approach to this difficult topic. The *Barnes* decision

23  should carry no persuasive weight.

24  **B.**     ***Strojnik v. Orangewood***

25      The unpublished *Orangewood* decision addressed the sufficiency of

26  a complaint that is quite different from the one before this Court. The

27

28

---

[61] *Barnes,* 2017 WL 635474 at *10.
[62] *Barnes,* 2017 WL 635474 at *13.

1    *Orangewood* court found that the plaintiff had not sufficiently stated a
2    claim for three reasons. First, because Strojnik was not a wheelchair user,
3    the court held that: "the information Plaintiff alleges he needs in order to
4    'assess independently' whether the Hotel meets his accessibility needs
5    relate to wheelchair users and are therefore not tied to his disability."[63]
6    Second, the *Orangewood* court found that "Plaintiff does not allege what
7    information was missing from the Third-Party Websites. Plaintiff alleges
8    that the booking websites 'fail to include information about important
9    features that do not comply with the Standards,' but it does not allege what
10   those features are."[64]

11          Neither of these things are true in the present case. Here, plaintiff is
12   a wheelchair user and has specifically and expressly delineated what
13   information is missing from the hotel's reservation website.

14          The third comment by the *Orangewood* court is dicta as it was
15   unnecessary to the holding and it involved the *Orangewood* court's
16   musings about the viability of the complaint *if plaintiff had made certain
17   allegations*. Moreover, the *Orangewood* court's discussion demonstrates an
18   unwarranted leap in logic. The court first noted that "a website need not list
19   its compliance or non-compliance with every ADAAG provision to satisfy
20   28 C.F.R. § 36.302(e)(ii) . . . websites need not include all potentially
21   relevant accessibility information."[65] That is certainly true. But the *Strojnik*
22   court then somehow concluded that "Therefore, even if Plaintiff had
23   sufficiently alleged the Third-Party Websites did not affirmatively state
24   whether the Hotel was in compliance with specific ADAAG provisions
25
26   ───────────────
     [63] *Strojnik v. Orangewood*, 8:19-cv-00946-DSF (C.D. Cal. Jan. 22,
27        2020), p. 15.
28   [64] *Orangewood* at p. 15.
     [65] *Orangewood* at p. 16.

Oppo to Motion to Dismiss                          5:21-cv-00023-JWH-SP

(e.g. accessible parking, appropriate doors on accessible routes, etc.), Plaintiff still would not have stated a claim for violation of the ADA."[66] In other words, according to the *Strojnik* court, because the website does not need to address *every* potentially relevant access issue, it is not required to describe *any* potentially relevant accessibility information. This is hardly persuasive analysis.

### C.   *Rutherford v. Evans Hotels*

In *Rutherford*, the plaintiff did not actually assess the defendant hotel's reservation website.[67] His claim that the website reservation system lacked required information was "based on [ ] speculation" from looking at the hotel's general webpage and the court found that such speculation was insufficient to provide standing.[68] As for Rutherford's argument that it was not enough for a hotel to simply claim that hotel features were "accessible," the court found that this claim was "dubious."[69] It does not seem that the court issued an actual holding on this topic but explained why it found the claim dubious. The court noted the musing commentary from the DOJ about what "might" be enough, and then it noted that Rutherford had testified that the hotel accessibility features were described "in some detail" and concluded, "just because Mr. Rutherford would like additional detail does not mean that he is entitled to it under Section 36.302(e)(1)(ii)."[70] But the decision does not outline what "details" were provided. The court's conclusion is undoubtedly true . . . just because a plaintiff wants "additional

---

[66] *Orangewood*, at p. 17.
[67] *Rutherford v. Evans Hotels, LLC*, 2020 WL 5257868, *16 (S.D. Cal. 2020).
[68] *Rutherford*, 2020 WL 5257868 at *16.
[69] *Rutherford*, 2020 WL 5257868 at *16
[70] *Rutherford,* 2020 WL 5257868 at *17.

1   details" does not mean he is entitled to them. But this truism cannot be
2   taken to mean that a plaintiff is not entitled to *any* details. In fact, the
3   regulatory language expressly states that a plaintiff is entitled to have
4   accessible features identified and described "in enough detail" to permit
5   independent assessment.[71]

6   **D.      *Garcia v. Gateway***

7          In *Garcia v. Gateway*, the court the court found that "Defendant's
8   use of the term accessible' is not merely conclusory, it means that the
9   features in the hotel defined by Defendant as 'accessible' comply with the
10  ADAAG" and that this essentially covers all bases and nothing more is
11  required. The court found that this, coupled with the fact that a person with
12  a disability can call the hotel on the phone and get more information, means
13  that the hotel has complied with the law.[72] Thus, according to the *Gateway*
14  court, a hotel website complies with the law by simply saying, "Our hotel
15  and its ADA guestroom are entirely accessible and comply with the ADA.
16  For more information, please call the hotel."  The case is on appeal. But for
17  the reasons stated in this brief, the *Gateway* court is simply wrong.
18  Collateral estoppel does not apply since, as Defendant admits, the website
19  in *Gateway* was different. Also the case was dismissed at the pleading
20  stage, depriving Plaintiff of the opportunity to litigate the matter.

21
22  **E.      *Strojnik v. Kapalua Land***

23          This decision went far afield of anything raised in the present motion.
24  It involved unrelated claims, it involved suing the hotels.com website (not
25  the actual hotel website) and it also had the same sloppy pleadings that seem
26  to characterize Strojnik's complaints. On the relevant topic, however, the

27  [71] 28 C.F.R. § 36.302(e)(1)(ii).
28  [72] *Garcia v. Gateway*, 2:20-cv-10752-PA-GJS (C.D. Cal.  February 25,
         2021).

only thing that *Kapalua* court had to say was this: "Plaintiff fails to cite to any legal authority providing that failure to detail *all accessible and inaccessible elements* of a public accommodation results in an ADA violation."[73] But the plaintiff in the present case has not and does not claim otherwise.

### F.   *Arroyo v. JWMFE* and *Salinas v. Apple Ten*

In *Arroyo v. JWMFE*, the plaintiff had analyzed an Expedia.com site instead of the defendant's own website. Thus, instead of filing a substantive opposition to the defense motion to dismiss, plaintiff admitted that the complaint was insufficient and requested leave to amend. The district court did not permit leave to amend and dismissed the case with prejudice. The *Arroyo* court proceeded to analyze the defendant's own website (although that was not in the complaint) and found that it was sufficient.[74] In doing so, the *Arroyo* court did not have any briefing input from the plaintiff and did not provide any substantive explanation for its ruling other than to list areas that the defense claimed "accessible" and to conclude that this was enough. The ruling is on appeal. Thus, the court's decision in *Arroyo* was over an unopposed motion and involving a complaint that is quite different than the one found in this case. It is not binding and should carry no persuasive value.

In *Salinas v. Apple Ten*, the same district judge (the Honorable Cormac J. Carney) granted an unopposed motion to dismiss with prejudice, using the same ruling as in *Arroyo v. JWMFE*.

---

[73] *Stojnik v. Kapalua Land*, 2019 WL 4685412, \*7 (D. Ha. 2019).
[74] *Arroyo v. JWMFE*, 8:21-cv-00014-CJC (C.D. Cal. February 16, 2021).

1
2

**IX. The DOJ's Consent Decree – as well as the DOJ Commentary – should not be taken to override or devalue the plain language of the regulatory language.**

3   This Court will notice that the defense motion does not focus upon
4   or try to grapple with the express language of the regulation at issue. The
5   defense does not dare try to explain what *describe in enough detail to*
6   *permit an independent assessment* means, much less try to connect the dots
7   with its website. Instead, the defense focuses on the DOJ commentary
8   found in the federal register about notice and rule making and its consent
9   decree with Hilton. And the defense cites to outdated decisions about the
10  substantial deference owed to enforcing agencies.

11  But the Supreme Court has recently weighed in on this very issue.
12  Even if the DOJ had formally interpreted its own regulation—*which it did*
13  *not do in either the Consent Decree or the Federal Register*—it would not
14  be entitled to deference unless the regulation is uncertain or ambiguous.[75]
15  Certainly, words like "describe accessible features . . . in enough detail to
16  reasonably permit individuals with disabilities to assess independently"
17  cannot be read out of existence based on what the DOJ mused about in the
18  Federal Register or a compromise agreement reached in litigation with a
19  particular hotel.

20  It should also be noted that the Consent Decree never mentions the
21  relevant regulation, never cites or uses the regulatory language, and was a
22  settlement agreement reached in November of 2010—almost half a year
23  before the regulation at issue in this case because effective and enforceable,
24  i.e., March 15, 2011.

25
26
27
28

[75] *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

24

**X.   Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the motion.


Dated: May 20, 2021                     CENTER FOR DISABILITY ACCESS

                                        By:   /s/ Zachary Best
                                        Zachary Best
                                        Attorney for Plaintiff

Oppo to Motion to Dismiss                              5:21-cv-00023-JWH-SP